# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**CECIL MATHEWS,**

     **Plaintiff,**

**vs.**                         **Case No. 4:15cv618-RH/CAS**

**WARDEN HODGSON, et al.,**

     **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff Cecil Mathews, proceeding pro se, filed a second amended complaint [hereinafter "complaint"], ECF No. 12, alleging that he was punished for exercising his right to free speech through the Department's grievance procedures.  ECF No. 12.  Because the complaint presented a debatable issue,[1] service was directed.  ECF Nos. 19, 24.  Four of the

---

[1] A prisoner's rights are limited by virtue of his incarceration, <u>Pell v. Procunier</u>, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974), and "an inmate's First Amendment right to free speech is not protected if affording protection would be inconsistent with the inmate's 'status as a prisoner or with the legitimate penological objectives of the corrections system.'" <u>Smith v. Mosley</u>, 532 F.3d 1270, 1277 (11th Cir. 2008) (quoting <u>Pell</u>); *see also* <u>Jones v. N. Carolina Prisoners' Labor Union, Inc.</u>, 433 U.S. 119, 125-26, 97 S.Ct. 2532, 3537–38, 53 L.Ed.2d 629 (1977) (cited in <u>Charriez v. Garcia</u>, No. 4:11cv379-LC/CAS, 2014 WL 1328508, at *8 (N.D. Fla. Mar. 31, 2014), aff'd sub nom. <u>Charriez v. Sec'y, Florida Dep't of Corr.</u>, 596 F. App'x 890 (11th Cir. 2015).

named Defendants filed a motion to dismiss based upon the argument that

Plaintiff failed to exhaust his administrative remedies and the complaint

fails to state a claim.  ECF No. 28.  The remaining two Defendants adopted

the motion to dismiss.  ECF No. 38.  Defendants also raised qualified

immunity as a defense and assert that Plaintiff is not entitled to declaratory

relief.  Mr. Mathews filed a response, ECF No. 29, in opposition to the

motion to dismiss, ECF No. 28, and ruling is now appropriate.

**Allegations of the complaint**

Mr. Mathews wrote a grievance to prison officials which resulted in

the issuance of a disciplinary report.  ECF No. 12 at 7.  The disciplinary

report, written by Defendant Hamlin, was for "disrespect."  *Id.*  Defendants

Smith and Hawkins were on the disciplinary team and found Mr. Mathews

guilty of disrespect.  He was sentenced to 20 days in disciplinary

confinement, but did not lose gain time.  *Id.*  Defendants Bratcher and

Hodgson affirmed the results of the disciplinary hearing, agreeing "that the

statements [made in the grievance] were disrespectful."  *Id.*  Plaintiff

contends that his First Amendment rights were violated and he seeks

nominal damages, expungement of the disciplinary report, and

reimbursement of the costs of this litigation.  *Id.* at 9.

**Standard of Review**

In considering whether a complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failing to state a claim upon which relief can be granted, the Court must consider whether the plaintiff has alleged enough plausible facts to support the claim stated. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (retiring the standard from Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that dismissal should not be ordered unless it appears beyond doubt that plaintiff could prove "no set of facts" in support of his claims which would entitle him to relief). The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests. Swierkiewicz v. Sorema, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions."). A complaint does not need detailed factual allegations to survive a motion to dismiss, but it must provide the grounds for a plaintiff's entitlement to relief beyond mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Twombly, 127 S.Ct. at 1964-65.

A complaint's factual allegations must be accepted as true when ruling on a motion to dismiss.  Marsh v. Butler Co., 268 F.3d 1014, 1023 (11th Cir. 2001); Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), *cert. denied*, 113 S. Ct. 1586 (1993).  Dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations."  Twombly, 127 S.Ct. at 1965 (quoting Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)).  Pro se complaints are held to less stringent standards than those drafted by an attorney.  Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986), citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972).  A complaint must, nevertheless, provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery and waste time.  Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005) (quoted in Twombly, 127 S.Ct. at 1966).

## I.   Exhaustion

The "defense of failure to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement."

Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008) (explained in Turner v. Burnside, 541 F.3d 1077, 1083 (11th Cir. 2008)).  Deciding an exhaustion issue is "not ordinarily the proper subject for a summary judgment" motion; instead it should be considered in a motion to dismiss. Bryant, 530 F.3d at 1374-75.  Such a "defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter."  Bryant, 530 F.3d at 1374 (cited in Turner, 541 F.3d at 1082).[2]  The fact that the parties have filed exhibits concerning the exhaustion defense does not require conversion of the motion to one seeking summary judgment as it does not concern the merits.  The process simply provides the parties with "a meaningful opportunity" to present the relevant evidence concerning the exhaustion defense.  Considering such matters beyond the pleadings is permissible in ruling on exhaustion.  530 F.3d at 1371, n.2.

Ruling on a "motion to dismiss for failure to exhaust administrative remedies is a two-step process."  Turner, 541 F.3d at 1082 (citation omitted).  "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict,

_____

[2] When motions to dismiss are based on issues not enumerated under Rule 12(b), then Rule 43(c) governs "which permits courts to hear evidence outside of the record on affidavits submitted by the parties."  Bryant, 530 F.3d at 1377, n.16.

takes the plaintiff's version of the facts as true." *Id.* "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* (citing to Bryant, 530 F.3d at 1373-74). "If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082 (citing Bryant, 530 F.3d at 1373–74, 1376). The burden of proof for evaluating an exhaustion defense rests with the Defendants. Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 921, 166 L.Ed.2d 798 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Turner, 541 F.3d at 1082-83.

When the Prison Litigation Reform Act was enacted, Congress mandated that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (quoted in ECF No. 28 at 4). The exhaustion requirement is

mandatory, and the Court lacks discretion to waive the requirement or provide continuances in the event a claim is unexhausted.  Alexander v. Hawk, 159 F.3d 1321, 1324-26; *see also* Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).  "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court."  Jones, 549 U.S. at 204-209, 127 S.Ct. at 914.  Furthermore, prisoners must comply with the process set forth and established by the grievance procedures, Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999), as § 1997e(a) "requires proper exhaustion."  Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 2387 (2006) (concluding that "proper exhaustion" means complying with specific prison grievance requirements, not judicially imposed requirements).

However, an inmate is not required to grieve a "breakdown in the grievance process" because the PLRA only requires that a prisoner exhaust his "available administrative remedies."  Turner, 541 F.3d at 1083. "[I]t is possible for retaliation or the threat of retaliation to make administrative remedies unavailable to an inmate."  *Id.*, at 1084 (citations omitted).

> A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be capable of use for the accomplishment of [its] purpose.  Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available.

*Id.* (citation omitted).

Mr. Mathews is housed within the Florida Department of Corrections which has an administrative grievance program, FLA. ADMIN. CODE R. 33-103.005.  After explaining the grievance process, *see* ECF No. 28 at 6, Defendants contend that Mr. Mathews did not completely exhaust his administrative remedies because (1) his attempted direct grievance was "not accepted as a grievance of reprisal" and (2) he did not exhaust the grievance process prior to filing the initial complaint.  *Id.* at 6-10. Mr. Mathews contends that he did exhaust administrative remedies because he timely submitted a grievance appeal in the grievance box as required prior to initiating this case.  ECF No. 29 at 1.  He contends that the "loss or theft of that grievance is not [his] responsibility."  *Id.* at 2.

In general, the grievance process used in the Florida Department of Corrections is a three step process: (1) file an informal grievance; (2) a formal grievance; and (3) a grievance appeal.  ECF No. 28 at 6; FLA. ADMIN. CODE R. 33-103.002.  The Department's rules permit inmates to

Case No. 4:15cv618-RH/CAS

bypass the informal grievance step and file a formal grievance at the institutional level for issues concerning disciplinary action.  FLA. ADMIN. CODE R. 33-103.005(1).  Thus, Mr. Mathews must have filed a formal grievance within "15 calendar days" of the disciplinary team's decision finding him guilty of the disciplinary report.

Mr. Mathews submitted an informal grievance in August 2015.  ECF No. 12 at 13.  After receiving a response to that grievance, *id.*, he submitted a formal grievance to the warden dated September 9, 2015, in which he used the phrase "Liar, liar, pants on fire."  ECF No. 12 at 12. Mr. Mathews was then issued a disciplinary report on September 11, 2015, for disrespect to officials.  ECF No. 28-4 at 9 (Defendants' Ex. D).  Because the claim at issue in this case is about that disciplinary action, only the two step grievance process was necessary.

Mr. Mathews filed a grievance about the discipline imposed on September 26, 2015.[3]  ECF No. 12 at 16.  His formal grievance was denied on October 6, 2015.  ECF No. 12 at 15.

---

[3] In his grievance, Plaintiff reported that the disciplinary report was written on September 9th, but not delivered to him until September 16th.  ECF No. 12 at 16.  It is unknown when the disciplinary hearing took place but the formal grievance is presumed to be a timely grievance since it was addressed on the merits.  *See* ECF No. 28-4 at 6.

Prior to receiving that denial, there is evidence that Mr. Mathews also attempted to submit a "direct grievance"[4] to the Secretary on September 20, 2015, which was date stamped "received" on September 24th.  ECF No. 28-3 at 2.  He argued that his grievance was not disrespectful, but funny and was "protected speech."  *Id.*  He claimed that the disciplinary report was unprofessional and retaliatory.  *Id.*  He further clarified that the "grievance of reprisal" was "not an appeal of that D.R."  *Id.*  On November 2, 2015, his grievance was "returned without action."  *Id.* at 1.  The response advised that the grievance was "not accepted as a grievance of reprisal."  *Id.*  The date of the response was November 2, 2015.  *Id.*

Mr. Mathews submitted an affidavit declaring that he also wrote an appeal which he "placed in the grievance box on October 12th, 2015." ECF No. 29 at 20 (Plaintiff's Ex. A).  He said his grievance appeal "was picked up to be mailed to" Central Office.  ECF No. 28-4 at 5.  He stated in a memo to Central Office that he "never received a receipt" for the appeal,

---

[4] A "direct grievance" of reprisal may be filed to the Office of the Secretary.  FLA. ADMIN. CODE R. 33-103.007(6)(a).   A response must be provided "according to established time frames."  FLA. ADMIN. CODE R. 33-103.007(6)(c).  It appears that a response would be due "within 30 calendar days" from the date of receipt.  FLA. ADMIN. CODE R. 33-103.011(3)(c).

and "specifically requested an institutional log number from the mail room" at his institution, but "never got one." *Id.*

In a third effort to exhaust administrative remedies, Mr. Mathews submitted a "D.R. Appeal for the second time," claiming that officials at Jefferson Correctional Institution "deliberately destroyed [his] first appeal." ECF No. 28-4 at 2 (Defendants' Ex. D).  Mr. Mathews reported that he placed his original appeal in the grievance box on Monday, October 23th, but never received his "request back from the mailroom [sic] asking for the institutional log # and then no receipt" was provided.  *Id.*  Mr. Mathews again argued that the disciplinary report violated his First Amendment rights and claimed he was not disrespectful.  *Id.*  He argued that "they" knew it was a violation "and that's why they stole the first" appeal.  *Id.*  His grievance was dated November 3, 2015, and stamped "received" by the Department's Inmate Grievances on November 12, 2015, *id.*, but ultimately "returned without action" on December 18, 2015.  The response stated that the appeal was not received "within fifteen calendar days of the institutional response."  ECF No. 28-4 at 1.

Defendants submitted the declaration of Rhonda Hall who states that she is the Mail Room Supervisor at Jefferson Correctional Institution.  ECF

No. 28-5 at 1 (Defendants' Ex. E).  She reviewed the grievance logs at

Jefferson Correctional Institution for October 12 and 13 of 2015.  *Id.*  She

states that Mr. Mathews submitted three grievance appeals on October 13,

2015.  *Id.*  Ms. Hall identified those appeals as Log Nos. 96-07908, 96-

07909, and 96-7910, but did not explain the substance of those appeals.[5]

*Id.*  Ms. Hall explained that inmates in confinement place grievance

appeals in a locked box and the appeals are picked up by the grievance

coordinator.  ECF No. 28-5 at 2.  The coordinator forwards them to the mail

room where they are mailed to Central Office if submitted in an envelope.

*Id.*  If a grievance "is not submitted in an envelope, it is logged in and

mailed to Tallahassee."  *Id.*  She declares that the three grievances located

on October 13, 2015, "would have been mailed to Tallahassee."  *Id.*  By

---

[5] Defendants submit that the three appeals were not "of the relevant DR."  ECF No. 28 at 8.  It would have been preferable to clearly identify the substance of those appeals.  The documents attached to that declaration are not helpful as the substance of the grievances are blacked out.  Nevertheless, review of Defendants' Exhibit A indicates Mr. Mathews has filed a multitude of grievance appeals which were received. ECF No. 28-1.  On October 13, 2015, an appeal was received concerning a medical issue, and on October 15th, another appeal was received concerning medication.  ECF No. 28-1 at 4.  Another appeal was received on October 13, 2015, which is identified only as "disagree with denial (grv proc)."  *Id.* at 5.  Additional information provided identifies this appeal as case number 15-6-37833, and states it was responded to on October 29, 2015, and mailed to Mr. Mathews on November 4, 2015.  *Id.*  The disposition was noted as "returned" as opposed to denied.  *Id.*  Whether that is relevant is unknown.  It is pointed out here because it has potential relevance and has not been explained.

implication, Ms. Hall's affidavit states that no grievance was received by Mr. Mathews on October 12th as he declared in his own affidavit.

Mr. Mathews submitted affidavits of several other inmates who also declare that they have submitted grievances, only to be informed that there was no record that the grievances were received.  ECF No. 29 at 25, 27. One affidavit in particular states: "I have also had several institutional appeals go unanswered at [Jefferson Correctional Institution] in an attempt to hinder an impartial review at the Central Office level."  *Id.* at 27 (affidavit of Clint Horvatt).  Mr. Horvatt states that attempted appeals are given the "excuse that the grievance log doesn't show I ever filed any."  *Id.*

This evidence demonstrates a dispute as to whether Mr. Mathews exhausted administrative remedies.  The affidavits submitted as evidence are in conflict.  When issues of exhaustion arise, judges are permitted "to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."  Bryant, 530 F.3d at 1376. Requiring jury trials to resolve factual disputes over the preliminary issue of exhaustion would be a novel innovation for a matter in abatement and would unnecessarily undermine Congress's intent in enacting the PLRA's

exhaustion requirement: that is, to "reduce the quantity and improve the quality of prisoner suits."  530 F.3d at 1376–77 (quoting Porter, 122 S.Ct. at 988); see also Tillery v. U.S. Dep't of Homeland Sec., 402 F. App'x 421, 424 (11th Cir. 2010) (concluding "the district court did not err by acting as the factfinder" in resolving factual dispute on motion to dismiss).

Here, Mr. Mathews submitted evidence which, if accepted as true, demonstrates that he submitted a grievance appeal concerning the disciplinary report.  Although the appeal was apparently not received in Central Office, there is no direct evidence which disputes Mr. Mathews' version of events.  Defendants do not dispute that Mr. Mathews attempted to mail a grievance appeal on October 12, 2015.  Accepting Mr. Mathews' evidence as true,[6] it appears that he did all he could do, and was required to do, by the rules.  He complied with the grievance requirements.

Moreover, not only did Mr. Mathews submit a "direct grievance" concerning the disciplinary report, he made two attempts to appeal the

---

[6] In accepting Mr. Mathews' evidence as true, it is also found to be credible. When considering the multitude of grievance appeals Mr. Mathews unquestionably filed, see ECF No. 28-5, it is apparent that he is well aware of the grievance process and uses it often.  It defies common sense that he would submit so many other grievances and appeals, yet not do so about a disciplinary report he believes was unconstitutional and a punishment he believes is unjust.

issue.  Indeed, his second appeal claimed that his "grievance appeal was stolen here in an attempt to hide their bogus D.R."  *See* ECF No. 28-4 at 2. The second appeal and direct grievance were rejected by prison officials, but Mr. Mathews provided prison officials with the opportunity to first address his claim prior to filing a lawsuit.

It is true that prisoners must exhaust administrative remedies under § 1997e(a), but only those that are "available."  Courts have concluded that "administrative remedies are not available to an inmate if prison officials do not respond to grievances or if they prevent the filing of grievances." Bryant, 530 F.3d at 1381, n.6 (citing to Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)). The Eleventh Circuit has not squarely decided this issue, but in a recent opinion, the Supreme Court has.  In Ross v. Blake, 136 S. Ct. 1850, 1859–60, 195 L. Ed. 2d 117 (2016), the Court explained that an administrative remedy must be "available" to be exhausted.  The Court noted three circumstances in which administrative remedies are not available: (1) when the administrative remedy "operates as a simple dead end;" (2) when an administrative scheme is "so opaque that it becomes, practically speaking, incapable of use;" and (3) when prison "administrators

thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross, 136 S. Ct. at 1859-60. "As all those courts have recognized, such interference with an inmate's pursuit of relief renders the administrative process unavailable." 136 S. Ct. at 1860. Mr. Mathews' evidence is credible and shows that he did all that was required, and more by making a second effort to grieve the issue. It should be concluded that Mr. Mathews' grievance appeal was thwarted and, thus, administrative remedies were not "available."

As an additional basis to proceed to the merits, it is worth noting that Mr. Mathews could be said to have exhausted administrative remedies with the submission of his grievance of reprisal and his second appeal. First, Mr. Mathews' direct grievance was received on September 24, 2015. ECF No. 28-3 at 2. A response was not provided to him until November 2, 2015, which is 39 days later. Prison officials have 30 calendar days to respond to a direct grievance. FLA. ADMIN. CODE R. 33-103.011(e)(c). "[E]xpiration of a time limit at any step in the process shall entitle the complainant to proceed to the next step of the grievance process." FLA. ADMIN. CODE R. 33-103.011(4). At that point, Mr. Mathews could have proceeded with this case.

Second, the second attempt to file a grievance appeal was admittedly submitted more than 15 days after the response to the formal grievance, but Mr. Mathews explained why.  He said that he previously mailed a grievance appeal but had not received a grievance log indicating his prior, timely appeal had been received.  Once again, prison officials had 30 calendar days in which to respond.  FLA. ADMIN. CODE R. 33-103.011(3)(c). The second appeal was received by the Department on November 12, 2015.  ECF No. 28-4 at 2.  A response was not provided until December 18, 2015, more than 30 days later.  *Id.* at 1.  Thus, Mr. Mathews was permitted to proceed to the next sept and file this case.

Third, it is preferable to decide cases on the merits and provide a litigant his day in court.  <u>Perez v. Wells Fargo N.A.</u>, 774 F.3d 1329, 1342 (11th Cir. 2014) (reversing an order granting judgment on the pleadings and citing to <u>Wahl v. McIver</u>, 773 F.2d 1169, 1174 (11th Cir.1985) (per curiam), and <u>Betty K Agencies, Ltd. v. M/V MONADA</u>, 432 F.3d 1333, 1339 (11th Cir. 2005)).  In light of the disputed evidence concerning exhaustion, the fact that prison officials did not timely respond to Mr. Mathews' direct grievance and grievance appeals, and the missing grievance appeal, the

motion to dismiss for failing to exhaust administrative remedies, ECF No. 28, should be denied.

## II.   Claim against Defendant Hamlin

Defendant Hamlin contends that Plaintiff cannot challenge the disciplinary report as a First Amendment retaliation claim because he was found guilty of the disciplinary report at the subsequent hearing.  ECF No. 28 at 10.  That initial argument should be rejected.  This is not the type of First Amendment case in which an inmate is charged in a disciplinary report for committing some alleged violation of prison rules in retaliation for filing prior grievances.  *See* O'Bryant v. Finch, 637 F.3d 1207, 1219 (11th Cir. 2011) (holding that because the record showed the defendants would have taken the same disciplinary action against the prisoner in the absence of the prisoner's grievances, the First Amendment retaliation claim failed).  Rather, Mr. Mathews was disciplined for language used in a grievance. O'Bryant is not on point.

Defendant Hamlin also seeks dismissal of this claim on the basis that Mr. Mathews' "right to say whatever he wants in a grievance is inconsistent with his prisoner status or with legitimate penological objectives."  ECF No. 28 at 10.  Prisoners do retain First Amendment rights of free speech and to

petition for redress of grievances.  Farrow v. West, 320 F.3d 1235, 1248

(11th Cir. 2003).  However, "a prison inmate retains those First Amendment

rights that are not inconsistent with his status as a prisoner or with the

legitimate penological objectives of the corrections system."  Pell v.

Procunier, 417 U.S. 817, 822, 94 S. Ct. 2800, 2804, 41 L. Ed. 2d 495

(1974).  "Thus, challenges to prison restrictions that are asserted to inhibit

First Amendment interests must be analyzed in terms of the legitimate

policies and goals of the corrections system, to whose custody and care

the prisoner has been committed in accordance with due process of law."

Pell, 417 U.S. at 822, 94 S. Ct. at 2804.

"Running a prison is an inordinately difficult undertaking that requires

expertise, planning, and the commitment of resources."  Turner v. Safley,

482 U.S. 78, 84-85, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987) (quoted in

Smith v. Mosley, 532 F.3d 1270, 1277 (11th Cir. 2008)).  "Prison officials

are therefore 'accorded latitude in the administration of prison affairs.'"

Smith, 532 F.3d at 1277 (quoting Cruz v. Beto, 405 U.S. 319, 321, 92 S.Ct.

1079, 1081, 31 L.Ed.2d 263 (1972)).  To prevail on a First Amendment

claim for infringing the right to freedom of speech, an inmate must establish

three elements: "(1) his speech was constitutionally protected; (2) the

inmate suffered adverse action such that the administrator's allegedly

retaliatory conduct would likely deter a person of ordinary firmness from

engaging in such speech; and (3) there is a causal relationship between

the retaliatory action and the protected speech." Smith, 532 F.3d at 1276.

Submitting a grievance to prison administrators about the conditions of

one's confinement is an exercise of speech. Farrow v. West, 320 F.3d

1235, 1248 (11th Cir. 2003); Smith, 532 F.3d at 1276. Yet all such speech

is not protected.

In Smith, the prisoner wrote a letter to the assistant warden which

resulted in issuance of disciplinary charges against the prisoner. 532 F.3d

at 1273-74. The Eleventh Circuit concluded that the prisoner's "false and

insubordinate remarks" in the letter were barred by valid prison rules[7] and

"were not protected" speech. Speech is not protected if related to

legitimate penological interests. The Court noted that an objective prison

administrator could reasonably assume "that the gist of what [the prisoner]

said in his letter, and the language he employed, which reeked of

disrespect for the administrators' authority, would be noised about the

---

[7] Rule 41 prohibited "Making False Statements or Charge to a DOC Employee with Intent to Deceive the Employee or to Prejudice Another Person" and Rule 57 prohibited "Insubordination." Smith v. Mosley, 532 F.3d 1270, 1273 (11th Cir. 2008).

prison's population and, if ignored, could seriously impede their ability to maintain order and thus achieve the institution's penological objectives." 532 F.3d at 1279.

On the other hand, in Moton v. Cowart, 631 F.3d 1337, 1339–40 (11th Cir. 2011), the prisoner wrote a grievance "in large capital letters: 'REMEDY: RETURN MY REQUEST DATED 10–15–04 WITH APPROPRIATE ANSWER AS REQURED [sic].'"  The responding prison official advised the prisoner that she planned to write him a disciplinary report for disrespect.  Moton, 631 F.3d at 1340.  The prisoner responded by essentially advising that he would contact his lawyer.  Id.  The prisoner was issued two disciplinary reports, one for disrespect and one for making a "spoken threat."  Id.  In reversing the district court's grant of summary judgment in favor of the prison official, the Eleventh Circuit held that using large, upper case letters in a grievance was not, in and of itself, disrespectful.  Id. at 1342.  Additionally, "an inmate's statement that he wants or plans to contact his attorney does not constitute a punishable 'spoken threat.'" Id. at 1342-43.

In this case, Mr. Mathews has shown the second and third elements of a First Amendment claim.  He has shown that he suffered adverse action

and he has shown a causal relationship between the disciplinary report and his speech.  The question is whether his speech was constitutionally protected speech.

Mr. Mathews submitted a formal grievance to the warden dated September 9, 2015, in which he used the phrase "Liar, liar, pants on fire." ECF No. 12 at 12.  Mr. Mathews was issued a disciplinary report on September 11, 2015, for disrespect to officials.  ECF No. 28-4 at 9 (Defendants' Ex. D).  According to the Merriam-Webster dictionary, "disrespect" is "to lack special regard or respect" for another.  Although Mr. Mathews contends that the phrase is just "funny," *see* ECF No. 28-3 at 2, a comedian may still be found to be disrespectful because of his choice of words.  Words matter, and in the contentious confines of a correctional institution, one's choice of words matters a great deal.  Satire holds an issue up to scorn in a comedic way, but such irreverence may not avoid controversy.  Here, Mr. Mathews' words were likely intended to be funny, but in doing so, he created controversy.  This controversy resulted in a disciplinary report.  Calling another person a liar is never received well, but in the prison setting, directing such words at prison officials will have ramifications.  Even when disguised with humor, the phrase carries an air

of disrespect.  It is hard to image that Mr. Mathews could have made the

comment verbally, with other inmates hearing his comment.  The lack of

respect would have been obvious.  What Mr. Mathews could not do in

person, he could not do through a written grievance either.  Word travels in

the prison environment.  *See* Smith, 532 F.3d at 1279 (noting that prison

administrators could assume a prisoner's comment would be gossiped

about in the prison environment and ignoring such could harm their ability

to maintain order).  Mr. Mathews' speech was disrespectful and, thus, was

not protected speech.  Thus, the motion to dismiss the First Amendment

claim against Defendant Hamlin should be granted.

## III.   Claims against remaining Defendants

The claims against Defendants Hodgson, Paynter, and Bratcher are

based on their failure to correct the action of Defendant Hamlin who wrote

the disciplinary report.  *See* ECF No. 12 at 8; ECF No. 29 at 11.  Because

the First Amendment claim is insufficient to state a claim, those Defendants

did not violate Mr. Mathews' rights in not reversing the disciplinary report

through the grievance process.  The motion to dismiss the claim against Defendants Hodgson, Paynter, and Bratcher should also be granted.[8]

The claim against Defendants Hawkins and Smith is that they found Mr. Mathews "guilty of disrespect" as charged in the disciplinary report and sentenced him "to 20 days of disciplinary confinement."  ECF No. 12 at 7. Mr. Mathews' speech was not protected speech.  Accordingly, Defendants Hawkins and Smith did not violate the First Amendment when they found Mr. Mathews guilty of "disrespect" as charged.

**Recommendation**

It is respectfully **RECOMMENDED** that the motion to dismiss, ECF No. 28, be **GRANTED** and this case be **DISMISSED** for failure to state a claim upon which relief may be granted.

**IN CHAMBERS** at Tallahassee, Florida, on January 23, 2017.


 S/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

---

[8] To be clear, Mr. Mathews was issued the disciplinary report by Defendant Hamlin.  Defendants Smith and Hawkins were on the disciplinary team that found him guilty as charged.  Defendants Bratcher, Hodgson, and Paynter did not overturn the disciplinary report and "allowed" it "to stand."  ECF No. 12 at 8.

Case No. 4:15cv618-RH/CAS

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**